## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE AT MEMPHIS

| | |
|---|---|
| Stephen Claud Messick, Next of Kin of Claud Thomas Messick, deceased, and on behalf of the wrongful death beneficiaries of Claud Thomas Messick,<br><br>                               Plaintiff,<br>v.<br><br>Ironshore Specialty Insurance Company<br><br>                               Defendant. | )<br>)<br>)<br>)<br>)<br>)       Cause No. _____<br>)       Division _____<br>)       Jury Demanded<br>)<br>)<br>)<br>) |

## COMPLAINT

      **COMES NOW** Plaintiff, Stephen Claud Messick, Next of Kin of Claud Thomas Messick, deceased, and on behalf of the wrongful death beneficiaries of Claud Thomas Messick, and complains of Ironshore Specialty Insurance Company ("Defendant"), and for this cause of action would show as follows:

## PARTIES

      1.      Stephen Claud Messick is the son of Claud Thomas Messick and brings this action as Next of Kin of Claud Thomas Messick, deceased, and on behalf of the wrongful death beneficiaries of Claud Thomas Messick.  Stephen Claud Messick lives at 6390 Lenden Wood Road, Memphis, Tennessee 38120.

      2.      Defendant Ironshore Specialty Insurance Company ("Ironshore"), is a foreign corporation incorporated under the laws of Arizona. Ironshore maintains its principal place of business in New York at 55 Broadway, New York, New York 10006, and contracted to insure risk

and property located in the State of Tennessee.  Ironshore may be served with process through its

registered agent, S. David Childers, 8601 North Scottsdale Road #300, Scottsdale, Arizona 85253.

## JURISDICTION AND VENUE

3.        Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over this action because

the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs, and is

between citizens of different states.

4.        Pursuant to 28 U.S.C. § 1391, venue is appropriate in this Court because a

substantial part of the events or omissions giving rise to the claim occurred within this district.

## FACTS

5.        On October 28, 2015, Plaintiff brought suit against Memphis OpCo, LLC d/b/a

Primacy Healthcare and Rehabilitation Center; West Tennessee Management Associates II, LLC;

West Tennessee Management Associates, LLC; Vanguard Financial Services, LLC; Vanguard

Healthcare, LLC; Vanguard Healthcare Services, LLC; and Vanguard Healthcare Management

Services, LLC, for the personal injuries and death of Claud Thomas Messick due to the negligent

care he received while he was a resident at Primacy Healthcare and Rehabilitation Center, a facility

owned and operated by the foregoing entities, located at 6025 Primacy Parkway, Memphis,

Tennessee 38119, from on or about June 7, 2013, until on or about July 25, 2014, when he was

transferred to Saint Francis Hospital where he stayed until on or about August 7, 2014, when he

died.

6.        Defendant Ironshore was the liability insurer for Plaintiff's claims against Memphis

OpCo, LLC d/b/a Primacy Healthcare and Rehabilitation Center; West Tennessee Management

Associates II, LLC; West Tennessee Management Associates, LLC; Vanguard Financial Services,

LLC; Vanguard Healthcare, LLC; Vanguard Healthcare Services, LLC; and Vanguard Healthcare Management Services, LLC ("Insureds").

7.      Following the filing of Mr. Messick's tort claims against the Insureds, the Insureds declared bankruptcy.  Defendant Ironshore was not a party to the bankruptcy.

8.      On or about December 16, 2016, the parties mediated Mr. Messick's tort claims against the Insureds pursuant to an order from the bankruptcy court.  A representative on behalf of Defendant Ironshore attended the mediation.

9.      At the mediation, the parties herein agreed to settle Mr. Messick's tort claims against the Insureds and Defendant Ironshore for a confidential sum of money to be paid by Defendant Ironshore to Plaintiff.

10.     On or about April 12, 2017, after much back and forth between the parties regarding the language of the Settlement Agreement, agreeable terms were finally reached and Plaintiff executed the Settlement Agreement.  (Due to a confidentiality provision within the Settlement Agreement, Plaintiff is prohibited from attaching a true and correct copy of the Settlement Agreement to this Complaint without order from the Court.)

11.     On April 13, 2017, Plaintiff's Counsel provided an executed copy of the Settlement Agreement to the Insureds' attorney.

12.     The Settlement Agreement is binding on the Insureds' insurer for Mr. Messick's tort claims, namely Defendant Ironshore.

13.     Defendant Ironshore is contractually obligated to pay Plaintiff the confidential settlement amount owed under the Settlement Agreement.

14.     To date, Defendant has failed to pay the sum required under the Settlement Agreement, despite the fact that Plaintiff's counsel provided an executed copy of the Settlement

Agreement and satisfied all other conditions set forth in the Settlement Agreement.  Thus, Defendant is in breach of the Settlement Agreement.

## COUNT I

## BREACH OF CONTRACT

15.     The allegations of Paragraphs 1-14 of the instant Complaint are hereby incorporated by reference into this Count of the Complaint, as if set forth verbatim herein.

16.     This is a claim for breach of contract.  The elements of breach of contract are: (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages resulting from the breach.

17.     Plaintiff and Defendant are parties to the Settlement Agreement, which is an enforceable contract.

18.     Pursuant to the Settlement Agreement, and in exchange for Plaintiff's release of tort claims against the Insureds and Defendant arising out of Claud Thomas Messick's residency at Primacy Healthcare and Rehabilitation Center, Defendant agreed to pay a confidential sum to Plaintiff.

19.     As of the filing of this Complaint, Defendant has failed to make payment as agreed upon in the Settlement Agreement.

20.     Plaintiff's Counsel has made multiple written and oral demands for payment.

21.     Plaintiff has fulfilled all of Plaintiff's obligations under the Settlement Agreement and is not in breach of the Settlement Agreement.

22.     As a direct and proximate result of Defendant's material breach of the Settlement Agreement, Plaintiff has suffered and continues to suffer significant damages in the amount of the

agreed upon settlement and is entitled to a judgment in his favor finding that Defendant is required to pay the confidential settlement amount.

23.     Plaintiff additionally seeks damages, including prejudgment interest, attorneys' fees, expenses, all damages available under the Settlement Agreement and controlling liability policy, and any additional relief the Court deems necessary or a jury determines.

## COUNT II

## INTENTIONAL MISREPRESENTATION

24.     Plaintiff re-alleges and incorporates the allegations in Paragraphs 1-23 as if fully set forth herein.

25.     The elements of intentional misrepresentation are: (1) that the defendant made a representation of a present or past fact; (2) that the representation was false when made; (3) that the representation involved a material fact; (4) that the defendant either knew that the representation was false or did not believe it to be true or that the defendant made the misrepresentation recklessly without knowing whether it was true or false; (5) that the plaintiff did not know that the representation was false when made and was justified in relying on the truth of the representation; and (6) that the plaintiff sustained damages as a result of the representation.

26.     On or about December 16, 2016, the parties agreed to settle Plaintiff's tort claims against the Insureds.

27.     During the course of negotiating the Settlement Agreement, and specifically on April 12, 2017, when the final Settlement Agreement was signed, Defendant represented through its agent, the Insured's attorney, to Plaintiff that Defendant would pay the total sum of the Settlement Agreement upon receipt of the signed Settlement Agreement.

28.     The aforementioned representations that Defendant would pay the sum of the Settlement Agreement upon receipt of Plaintiff's signed copy, was a material fact, as Plaintiff would not have otherwise agreed to the terms of the Settlement Agreement or to release Defendant and the other Insureds of liability for Plaintiff's tort claims against them.

29.     Defendant knew that the aforementioned representations were false at the time they were made.  Following the agreement to settle, reached on December 16, 2016, Defendant has continued to stall and delay payment of the money owed to Plaintiff pursuant to the Settlement Agreement.

30.     For example, on May 11, 2017, following multiple written notices by Plaintiff's Counsel of Defendant's failure to pay as required by the Settlement Agreement, Defendant's Counsel, for the first time, requested a number of additional documents from Plaintiff that Defendant's Counsel claimed were necessary to process payment.  However, nothing in the Settlement Agreement required Plaintiff to produce any additional documents prior to Defendant issuing the settlement payment.  Nevertheless, Plaintiff's Counsel complied with Defendant's request and produced the documents requested.  Despite receipt of the requested documentation and multiple subsequent requests by Plaintiff's counsel, Defendant has yet to make payment as required by the Settlement Agreement.  Further, Defendant's counsel has failed to substantively respond to any inquiry regarding payment pursuant to the Settlement Agreement prior to the filing of this action.

31.     Defendant intentionally misrepresented to Plaintiff that Defendant would make payment upon receipt of the signed Release and Settlement Agreement.

32.     Defendant then intentionally misrepresented that payment of the settlement funds would be forthcoming upon the receipt of additional documents requested by the Defendant.

33.     Defendant knew when it made the representations on December 16, 2016, April 12, 2016, and again on May 22, 2016, that it had no intention of paying the settlement funds pursuant to the terms of the Settlement Agreement.

34.     Plaintiff relied on Defendant's representations, was justified doing so, and had no reason to know that the representations were false when made.

35.     Defendant's misrepresentations induced Plaintiff to release Defendant and the Insureds of tort liability for the injuries sustained by Claud Thomas Messick while he was a resident at Primacy Healthcare and Rehabilitation Center in exchange for payment of the total sum as set forth in the Settlement Agreement.

36.     As a direct and proximate result of Defendant's material misrepresentations, Plaintiff has suffered and continues to suffer significant damages in the amount of the agreed upon settlement and is entitled to a judgment in his favor finding that Defendant is required to pay the confidential settlement amount.

37.     Not only has Plaintiff been deprived of the full value represented in the Settlement Agreement, but Plaintiff has been deprived of the ability to invest or otherwise accrue interest on the amount still owing under the Settlement Agreement for more than five (5) months, as of the filing of this Complaint.  Additionally, Plaintiff has been forced to take legal action and incur additional legal costs as a result of Defendant's misrepresentations.

38.     Plaintiff additionally seeks damages, including prejudgment interest, attorneys' fees, expenses, all damages available under the Settlement Agreement and controlling liability policy, and any additional relief the Court deems necessary or a jury determines.

## REQUEST FOR TRIAL BY JURY

39.     Plaintiff demands a trial by a jury of twelve (12) on all issues herein set forth.

## DAMAGES

WHEREFORE, Plaintiff prays for a judgment against Defendant as follows:

1.    For damages to be determined by a jury, in an amount exceeding the minimum jurisdictional amount of the Court, and adequate to compensate Plaintiff for all of the injuries and damages sustained;

2.    For all general and special damages caused by the conduct of Defendant;

3.    For the costs and attorneys' fees for litigating the present action;

4.    For punitive damages sufficient to punish Defendant for its egregious conduct and to deter Defendant from repeating such conduct in bad faith; and

5.    For all other relief to which the Plaintiff is entitled by law.


Respectfully submitted,

**JEHL LAW GROUP, PLLC**


By:    */s/ Cameron C. Jehl*
       Cameron C. Jehl (BPR#18729)
       Carey L. Acerra (BPR#23464)
       5400 Poplar Avenue, Suite 250
       Memphis, Tennessee 38119
       Telephone Number:   901-322-4232
       Facsimile Number:   901-322-4231

       *Attorneys for Plaintiff*